UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **DAVID SMITH, a pseudonym,**<br>*Plaintiff*,<br><br>v.<br><br>**BROWN UNIVERSITY, et al.**<br><br>*Defendants*. | C.A. No. 1:22-cv-00329-JJM-PAS |

### DEFENDANT BROWN UNIVERSITY'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL RESPONSE TO PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant Brown University ("Brown" or the "University") has properly raised relevancy and proportionality objections to Plaintiff's Third Request for Production of Documents under Federal Rule of Civil Procedure 26(b)(1). Also, Brown has properly asserted its legal obligations to ensure the confidentiality of "education records" subject to the Family Educational Rights and Privacy Act ("FERPA") and the United States Department of Education's regulations implementing FERPA's requirements. 20 U.S.C. § 1292g, 34 CFR Part 99. Brown's objections are hardly "unfounded" as Plaintiff wrongly states in his improperly filed motion.[1]

Particularly, Brown must protect the privacy and confidentiality rights of former and current students as required under FERPA, who are not parties to this litigation and participated in other unrelated sexual misconduct cases (either as parties or witnesses) that addressed sensitive student interactions. Brown would assert the same objections in another lawsuit, if a litigant sought the University's production of the investigative report pertaining to Jane Roe's sexual misconduct

---

[1] Unlike Brown which has complied with the Court's Pretrial Order's requirements to resolve discovery disputes in this litigation, Plaintiff filed his motion to compel without initially presenting this discovery dispute to the Court through an informal conference.

complaint against Plaintiff and the panel and appellate decisions finding Plaintiff responsible for sexually assaulting Jane Roe. Plaintiff would certainly not label Brown's positions as "unfounded," if the University similarly raised objections under Rule 26(b)(1) and FERPA in response to a document request for his education records in another lawsuit.

For the reasons argued below, the Court should deny Plaintiff's motion to compel.

## I.   The Discovery Issue Before The Court

### A.   Plaintiff's Interrogatory No. 10 and Brown's Detailed Responsive Chart

As interrogatory no. 10 in his first set of interrogatories, Plaintiff requested that Brown provide descriptive information regarding sexual misconduct cases from academic years 2017 to the present. On June 20, 2023, Brown produced a chart detailing the following information regarding student-on-student sexual misconduct complaints dating back to 2017 that proceeded to hearing determinations: (1) the complainant's gender, (2) the respondent's gender, (3) the month and year in which the complaint was filed, (4) the charges, (5) the investigator, (6) the applicable Brown policy and complaint procedure, (7) the month and year of the hearing, (8) the names of the hearing panelists, (9) the determinations regarding the charges, (10) the discipline (if a respondent was found responsible), (11) whether an appeal was filed and, if so, by which student party, (12) the appeal panel members, and (13) the outcome of the appeal. Further, Brown referred Plaintiff to publicly available data and detailed information published in its Title IX and Gender Equity Office's Annual Outcome Reports dating back to academic year 2015-16. *See* https://www.brown.edu/about/administration/title-ix/annual-outcome-report

Brown produced the detailed chart subject to its objections on relevancy and proportionality grounds. Brown also appropriately stated its legal obligation under FERPA to protect the privacy and confidentiality rights of former and current Brown students.

2

### B.    Plaintiff's Third Request for Production of Documents

On July 12, 2023, Plaintiff propounded his third document request to Brown, which seeks the production of the investigative reports, hearing panel decisions, and appeal decisions relating to four of the complaints detailed in the chart (with student names redacted but genders identified). Plaintiff's request also seeks Brown's production of such documents pertaining to any other complaint related any of the four specified complaints (e.g., a case involving cross-complaints).

On July 18, 2023, Brown promptly served its objections to Plaintiff's document request. During a "meet and confer" conference, Brown relied upon its proper assertion of relevancy and proportionality objections and its legal obligation to comply with FERPA's requirements.

### C.    The Complaints at Issue

Six complaints are within the scope of Plaintiff's document request and his motion to compel, which are described as follows chronologically:

- Complaints 1-3:  Two students filed a total of three complaints in related proceedings involving them during the 2016-17 academic year.

- Complaint 4:  Two students filed cross-complaints during the 2018-19 academic year.

- Complaints 5-6:  Two students filed cross-complaints during the 2021-22 academic year.[2]

None of the six complaints were investigated by Defendant Donna Davis. Brown describes below further details distinguishing these complaints from Plaintiff's case at the University.

#### 1.    Complaints 1-4

Brown investigated and decided each of the first four complaints before Plaintiff enrolled at the University in September 2019. Particularly significant, Brown addressed the four complaints

---

[2]  Brown has been careful to keep its descriptions of the six complaints generalized to avoid any possible disclosure of student identifies in this public filing.

3

under former University policies and procedures, which were no longer in effect when Brown addressed Jane Roe's complaint against Plaintiff during the 2021-22 academic year, as a result of changes to Title IX's regulations in 2020.

Specifically, effective August 14, 2020, the United States Department of Education implemented significant amendments to its Title IX regulations, prescribing how a federal funding recipient must respond to alleged Title IX sexual harassment within its education program or activity as jurisdictionally defined by the amended regulations. *See* 34 CFR §§ 106.30, 106.44, 106.45. In response to and in compliance with the 2020 changes to the Title IX regulations, Brown revised its Title IX policy and complaint procedures. Additionally, to ensure that Brown's approach to responding to reports alleging sexual violence and gender-based harassment remains comprehensive, the University adopted a policy and complaint procedure to address sexual misconduct complaints concerning certain incidents that occur outside of the University's Title IX education programs or activities, such as in this case where Jane Roe's complaint against Plaintiff pertained to an off-campus incident within a third-party owned and controlled residential property.[3]

Regarding the hearing and appeals panelists who presided in each of the first four complaints, none of these individuals presided at Plaintiff's hearing in July 2022 nor participated

---

[3] Over the past twelve years, the Department of Education's administrative Title IX requirements have changed significantly. The Obama Administration issued Title IX guidance documents in April 2011 and April 2014, which the Trump Administration rescinded in September 2017 while implementing at that time interim requirements pending the completion of the Department of Education's rulemaking process to amend its Title IX regulations. The Department's amended Title IX regulations, which took effect on August 14, 2020, remain in place. In July 2022, the Biden Administration issued a notice of intended rulemaking to amend the Title IX regulations significantly. The Department of Education recently announced that it will issue its amended Title IX regulations in or about October 2023. As Title IX's administrative requirements have changed, Brown has amended its policies and procedures accordingly to ensure its continuing Title IX compliance.

in the determination of his appeal. Also, Brown's current Title IX Coordinator joined the University in February 2022 – well after the University investigated and decided the first four complaints. *See Haidek v. Univ. of Mass-Amherst*, 933 F.3d 56, 75 (1st Cir. 2019) (rejecting a Title IX selective enforcement claim that sought to compare decisions in varying cases made by distinct decision-makers). There is no logic to Plaintiff's claim that past investigations by prior investigators and past determinations made by other decision-makers (under former policies and procedures) might somehow shed light on his disputed allegations of bias by the investigator and decision-makers in his case.

### 2. Complaints 5-6

Regarding the fifth and sixth complaints at issue, Brown investigated and determined the students' cross-complaints during the 2021-22 academic year (the same year as Plaintiff's case). However, the cross-complaints involved allegations of each student accusing the other of sexual misconduct, whereas Plaintiff did not accuse Jane Roe of sexual misconduct nor file a cross-complaint against her. Among the panelists who participated in the hearing and appellate determinations in the fifth and sixth complaints, only one such panelist presided at Plaintiff's hearing (the Chair who was a non-voting participant) and there was only one overlapping panelist in the appellate processes (which are decided by three-person panels).

## II. Standard of Review

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim and proportionate to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

5

Discovery must have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). The Court has "broad discretion to manage discovery matters." *Heidelberg Ams. Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003). This is especially true and necessary here when Plaintiff's discovery seeks to invade the privacy and confidentiality rights of non-party students whose education records are protected by FERPA. When discovery seeks a nonparty's education records, FERPA is "best read as a reason to 'place a higher burden on a party seeking access to student records to justify disclosure than with the discovery of other types of records.'" *Lipian v. Univ. of Mich.*, Case No. 18-13321, 2020 WL 2513082, at *3 (E.D. Mich. May 15, 2020) (quoting *Ellis v. Cleveland Mun. Sch. Dist.*, 309 F. Supp. 2d 1019, 1023 (N.D. Ohio 2004)).

Additionally, the Court "must limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenience, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues." *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, no. 13-cv-02419, 2014 WL 12814933, at *2 (D. Mass. 2014).

**III.   Argument**

    **A.   The requested education records are not relevant to this litigation nor proportionate to its needs.**

As the Court has held in other lawsuits, each complaint of student-on-student sexual misconduct presents its own unique events and circumstances. For example, in another proceeding

6

in which several complainants sought to litigate together, the Court appropriately severed their cases into individual proceedings because of the particularized time-frames, events, and circumstances pertaining to each of their individual sexual misconduct complaints. *See*, *e.g.*, *Soenen v. Brown Univ.*, C.A. No. 21-cv-325-JJM-PAS, Doc. Nos. 34 (each case requires a "granular assessment" of the sexual misconduct allegations) and 55 (severing the plaintiffs' claims because they pertained to "separate" and "distinct" events and circumstances).

Similarly, the Southern District of New York recently recognized the distinct facts and circumstances posed in each student-on-student sexual misconduct complaint:

> In a search for other evidence of supposed gender-bias animus, Plaintiff next pivots to other students charged with misconduct. He points to a spreadsheet compiled by NYU that appears to show *some* females at the university received more lenient sanctions than *some* males for engaging in the same general categories of misconduct, (e.g., Relationship Violence or Sexual Harassment). [] But categories of misconduct can encompass a broad range of conduct with varying degrees of seriousness. And it is easy to cherry-pick out a single category of one female student and one male student who received different sanctions. The real problem is that Plaintiff *makes no effort* to account for nondiscriminatory explanations of the disparity in sanctions, such as the different facts of specific cases.

*Doe. v. New York Univ.*, Case No. 1:20-cv-1343-MKV, 2023 WL 5293688, at *5 (S.D.N.Y. Aug. 17, 2023) (emphasis in original, internal quotation marks and citation omitted).[4]

As is evident from his 120-page Verified Amended Complaint (pleading 418 paragraphs and eight counts) and his multiple discovery requests already directed at the defendants, Plaintiff wants to engage in a kitchen-sink litigation strategy. Brown will defend itself to show that it followed its policies and procedures. But, "ultimate and necessary" discovery boundaries must be drawn here and now to protect the privacy and confidentiality rights under FERPA of non-party

---

[4] As shown in Brown's chart produced to Plaintiff, the University reached varying determinations across the listed complaints, which confirms that its processes are equitably applied to each case and dispels any inference of any alleged pattern of gender bias.

former and current Brown students, who participated in the University's investigation and determination of other unrelated and distinct sexual misconduct cases, involving sensitive details of private sexual encounters that were not intended for disclosure outside of the procedures conducted by Brown under its policies.

Plaintiff should not be allowed to divert this litigation onto unnecessary and time-consuming detours for him to conduct granular assessments of the separate and distinct events, circumstances, investigations, and determinations of six other student-on-student sexual misconduct complaints at Brown (four of which pre-date his September 2019 enrollment, were investigated and determined under former policies and procedures, and date back several years before his case was investigated and decided during the 2021-22 academic year). All six of the complaints at issue are unrelated to Brown's investigation and determination of Jane Roe's complaint against Plaintiff. On relevancy and proportionality grounds, Plaintiffs' motion to compel should be denied.

> **B.    Brown has adhered to its FERPA obligations and protected the privacy and confidentiality rights of the nonparty students in their education records.**

All of the documents requested by Plaintiff are highly confidential and contain sensitive information about former and current Brown students that constitute "education records" under FERPA's statutory and regulatory requirements. 20 U.S.C. § 1232g, 34 CFR Part 99. FERPA broadly defines "education records" as "those records, files, documents, and other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A); *see also* 34 CFR § 99.3 (similarly defining "education records").

FERPA precludes educational institutions from disclosing "personally identifiable information in education records," without a student's prior consent unless a specifically enumerated exception applies. 20 U.S.C. § 1232g(b)(2); 34 CFR §99.31. "Personally identifiable

8

information" is defined broadly to include, in additional to basic identifiable information (such as name, date of birth, address, a social security number, or a student number), "[o]ther information that, alone, or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty. 34 CFR § 99.3. Additionally, its scope includes "[i]nformation requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates." *Id*. Here, even in a redacted format, there is still a real and significant possibility of the personal identification of student parties and witnesses referenced within the requested documents. This is especially true pertaining to the fifth and sixth complaints at issue, involving student parties and witnesses who attended Brown at the same time as Plaintiff before his graduation.

FERPA contains a litigation exception allowing for the production of education records, but only subject to specified mandatory requirements. 20 U.S.C. § 1232g(b)(2)(B) (exempting "information furnished in compliance with judicial order or pursuant to any lawfully issued subpoena."), 34 CFR § 99.31(a)(9). As stated in the FERPA regulations, this exception requires the following:

> (a) An educational agency or institution may disclose personally identifiable information from an education record of a student without consent required by § 99.30 if the disclosure meets one or more of the following conditions:
>
> \*\*\*
> (9)(i) The disclosure is to comply with a judicial order or lawfully issued subpoena.
>
> (ii) The educational agency or institution may disclose information under paragraph (a)(9)(i) of this section only if the agency or institution makes a reasonable effort to notify the parent or eligible student of the order or subpoena in

9

advance of compliance, so that the parent or eligible student my seek protective action, . . .[5]

34 C.F.R. § 99.31(a)(9)(ii). *See also* 20 U.S.C. § 1232g(b)(2)(B) (prescribing that students must be "notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency").

As Plaintiff acknowledges in his motion, the mandatory requirements of FERPA's litigation exception have not occurred here, so Brown has appropriately objected to his document request. Specifically, no court order has been entered determining that the documents should be produced and compelling Brown to do so, subject to the reasonable notice required under FERPA that must be provided to former and current students, informing them of their right to seek protective action from the Court <u>before</u> Brown's production of their education records.

Further, Brown must raise an additional proportionality concern, if it is required to produce investigative reports with the redacted annotations requested by Plaintiff. As the Court knows, the investigative reports in student-on-student sexual misconduct cases contain not only the body of the report itself, but also many exhibits (typically text messaging evidence or social media postings that comprise dozens or hundreds of pages). If Brown were required to make the annotated redactions, it would take a significant amount of time for the University to review the reports and their many exhibits line-by-line to ensure that all actual or reasonably potential personal identifiable information is properly redacted.

Finally and especially significant, Brown wishes to raise its concerns about the potential chilling effects created by allowing the discovery sought by Plaintiff. If Brown must issue FERPA

---

[5] FERPA allows for certain limited exceptions to the reasonable notice requirement that are inapplicable here, such as compliance with a grand jury subpoena, law enforcement subpoena, or *ex parte* order obtained by the United States Attorney General or a designee. 34 C.F.R. § 99(a)(9)(ii)(A-C).

4878-7366-8707.2

notices here (which will include student recipients who are currently enrolled at the University), it could create a profound effect on reporting by students who may have experienced sexual harassment or sexual violence, as well as on participation by students as parties or witnesses in Brown's internal processes. If students fear that their sensitive and personal stories will be divulged in subsequent litigation – litigation in which they are not a party – this will likely have a potentially chilling effect on complainants and witnesses. *See*, *e.g,*, *Doe v. Bd. of Trs. of Nebraska State Colleges*, No. 8:17CV265, 2018 WL 4190056, at *5 (D. Neb. Aug. 31, 2018) ("disclosing further documentation . . . would undermine the confidentiality of students who are not parties to the action and who have not consented to releasing that information.").

In the *Nebraska State Colleges* case, the court faced a similar discovery dispute, where the plaintiff sought the production of reports relating to other sexual assault cases. The defendants produced summary information, which the court ruled was "sufficient to illuminate whether any policy, pattern, and practice of behavior [was] relevant to Plaintiff's allegations." *Id*. at *5. Here, Brown has provided such sufficient information through its detailed chart in response to Plaintiff's interrogatory no. 10. In his motion to compel, Plaintiff only selectively describes the detailed information provided in the chart. Plaintiff has not provided any foundational support to suggest that there is any pattern or practice of gender discrimination against male students in Brown's processes. In fact, the chart dispels any such inference (evidencing cases in which the University found that respondents were not responsible for the alleged conduct). *See Doe v. Univ. of Denver*, 952 F.3d 1182, 1193-94 (10th Cir. 2020) ("When the statistical evidence does nothing to eliminate these obvious, alternative explanations for the disparity, an inference that the disparity arises from gender bias on the part of the school is not reasonable.") (citations omitted). Instead, Plaintiff merely expresses his strong subjective disagreement with the result in his disciplinary case, which

11

is the actual justification for his request seeking to invade the privacy interests and confidentiality rights under FERPA of other student parties and witnesses who participated in distinct and unrelated cases.

**C.   If the Court orders Brown's production of any of the requested education records subject to FERPA's notice requirements, Plaintiff's proposed order is improperly drafted and requires modification.**

If the Court overrules Brown's relevancy and proportionality objections and orders the University's production of FERPA-protected education records to any extent, Plaintiff's proposed form of order is deficient because of its generality. It is not sufficiently drafted to afford specific notice to recipients of what Plaintiff is actually seeking within their education records. The FERPA notice should specifically inform the former or current Brown students that the requested educational records relate to the student's participation in the investigation and determination of a student-on-student sexual misconduct case at Brown (either as a party or a witness).[6]

Plaintiff wrongly tries to expand upon his document request through his proposed order. His Third Request for Production of Documents seeks that Brown produce the requested investigative reports and decisions "with student names redacted, but genders indicated." ECF Doc. 44-2 at 4. Now in his proposed order, Plaintiff wants the Court to require that Brown must produce the investigative reports and decisions with "redaction stamps that include student specific pseudonyms for each student who education records are included in the documents (i.e., Student

---

[6]   Clearly, FERPA notices must be sent to the student parties (the complainant and the respondent) in the other cases that Plaintiff seeks to explore in discovery, because the investigative reports and the hearing and appellate decisions constitute "education records" that are "directly related" to each student party. Given FERPA's broad definition of an "education record," its protections can reasonably be construed to protect the privacy interests of student witnesses who participated in an investigation or a hearing. If the Court rules that Brown must produce any of the requested confidential documents subject to FERPA notices, Brown defers to the Court's determine, in consultation with the parties, whether such notices should be similarly provided to the students who were witnesses in the proceedings at issue.

12

1, Student 2, etc."), and must also provide "a legend so that [Plaintiff] can determine the identities of the students that correspond with each pseudonym." These newly sought details are wholly improper, particularly Plaintiff's new demand to learn the identities of the non-party students. Clearly, Plaintiff wants to conduct investigations and perhaps issue subpoenas and deposition notices to third-party students about the events and circumstances in other student-on-student sexual misconduct cases. Plaintiff would certainly not want Brown to disclose his identity in any other lawsuit, and he is not entitled to such identifying information about other students in his lawsuit.

Also, the required FERPA notice must afford reasonable time for the recipients to understand and review their legal rights and options. Regarding any FERPA notices to former Brown students, the recipients will be dispersed geographically (likely mostly outside of Rhode Island). Notices to current students will be sent to them at or near the beginning of Brown's 2023-24 academic year. Practically, under these circumstances, the fourteen-day response period proposed by Plaintiff is too short. In order to afford the non-party recipients with the ability to retain and confer with legal counsel (if they want) and determine whether they want to approach the Court to seek protective relief, Brown submits that any FERPA notices should afford the recipients at least a twenty-one day period to assess their rights.

For efficiency purposes and to ensure uniformity, a recipient of the required FERPA notice should be directed to contact only Brown's counsel of record (Steven M. Richard) with any inquiries, not to a Brown dean (in the instance of an inquiry by any current Brown student) or Brown's Office of the General Counsel (in the instance of an inquiry by any former Brown student) as Plaintiff proposes.

Finally, as noted above, the task of redacting and annotating the investigative reports and their exhibits will be tedious and time-consuming. Brown should be afforded at least a thirty-day period to produce the documents, <u>after</u> both the expiration the FERPA notice period and the Court's adjudication of any requests for protective action by any non-party former or current Brown students regarding their education records.

### IV.  CONCLUSION

Plaintiff has not sufficiently shown that he should receive the requested investigative reports and decisions pertaining to six unrelated student-on-student sexual misconduct complaints. Accordingly, his motion to compel should be denied on relevancy and proportionality grounds. If the Court disagrees and grants Plaintiff's motion in whole or in part, FERPA's required reasonable notice requirements must be effectuated. All affected non-party current and former Brown students must be afforded with a reasonable time period (at least twenty-one days) to seek protective action by the Court before Brown must produce any of their educational records to Plaintiff.

BROWN UNIVERSITY

By Its Attorney,

 */s/ Steven M. Richard*
Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI  02903
srichard@nixonpeabody.com
Telephone: (401) 454-1020
Facsimile:  (866) 947-1332
Dated: August 22, 2023

14

## **CERTIFICATE OF SERVICE**

I certify that, on the 22nd day of August, 2023, I filed and served this memorandum through the Court's CM/ECF system.

/s/ Steven M. Richard

4878-7366-8707.2